1

2

3                          UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5

6    KELLIE W.,[1]                                Case No.  22-cv-02131-TSH

7                   Plaintiff,

8           v.                                   **ORDER RE: CROSS-MOTIONS FOR**
                                                 **SUMMARY JUDGMENT**
9    KILOLO KIJAKAZI,
                                                 Re: Dkt. Nos. 16, 18
10                  Defendant.

11

12                            **I.    INTRODUCTION**

13          Plaintiff Kellie W. moves for summary judgment to reverse the decision of Defendant

14   Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability

15   benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 16.  Defendant cross-

16   moves to affirm.  ECF No. 18.  Pursuant to Civil Local Rule 16-5, the matter is submitted without

17   oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and

18   relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's

19   cross-motion for the following reasons.[2]

20                          **II.    PROCEDURAL HISTORY**

21          On October 19, 2016, Plaintiff filed an application for Social Security Disability Insurance

22   benefits with a disability onset date of August 9, 2016.  AR 187.  The application was initially

23   denied on April 11, 2017 and again on reconsideration on August 3, 2017.  AR 10.  An

24   Administrative Law Judge ("ALJ") held a hearing on April 11, 2019 and issued an unfavorable

25

26   _____

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
27   recommendation of the Committee on Court Administration and Case Management of the Judicial
     Conference of the United States.
28   [2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF
     Nos. 11, 12.

United States District Court
Northern District of California

decision on July 12, 2019.  AR 7-10.  The Appeals Council denied Plaintiff's request for review on May 26, 2020.  AR 1-5.  Plaintiff sought review pursuant to 42 U.S.C. § 405(g).  *See* ECF Nos. 17 at ¶ 4; 18-1 at ¶ 4; *see generally Walker v. Saul*, No. 20-cv-4061, ECF No. 21.  On April 19, 2021, the Court held "the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim" and remanded Plaintiff's case to the Social Security Administration for further proceedings.  *Walker v. Saul*, No. 20-cv-4061, ECF No. 27 at 23.

On November 4, 2021, an ALJ held a hearing on remand and issued an unfavorable decision on February 2, 2022.  AR 1491-1509.  Plaintiff filed the instant action on April 4, 2022.  ECF No. 1.  On August 3, 2022, Plaintiff filed a Motion for Summary Judgment, seeking review of the ALJ's February 2, 2022 remand order pursuant to 42 U.S.C. § 405(g).  ECF No. 16.  On August 31, 2022, Defendant filed an Opposition and Cross-Motion for Summary Judgment.  ECF No. 18.  On September 10, 2022, Plaintiff filed a Reply.  ECF No. 19.

### III.   ISSUES FOR REVIEW

Plaintiff raises three arguments on appeal: (1) the ALJ erred in evaluating the medical opinions of (a) Dr. Ives, (b) Dr. Samuelson, and (c) Dr. Tirado; (2) the ALJ's step-five hypothetical failed to reflect all of Plaintiff's limitations; and (3) the ALJ erred in evaluating Plaintiff's subjective statement testimony.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (simplified).  It means "more than a mere scintilla, but less than a preponderance" of the evidence.  *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that

United States District Court
Northern District of California

United States District Court
Northern District of California

1  supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

2  simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted).  "The ALJ

3  is responsible for determining credibility, resolving conflicts in medical testimony, and for

4  resolving ambiguities." *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support

5  either affirming or reversing a decision," the Court may not substitute its own judgment for that of

6  the ALJ." *Id.* (citation omitted).

7       Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

8  harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012).  "[A]n error is harmless

9  so long as there remains substantial evidence supporting the ALJ's decision and the error does not

10  negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified).  But "[a] reviewing

11  court may not make independent findings based on the evidence before the ALJ to conclude that

12  the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492.  The Court is "constrained to

13  review the reasons the ALJ asserts." *Id.* (simplified).

14                          **V.    DISCUSSION**

15  **A.    Framework for Determining Whether a Claimant Is Disabled**

16       A claimant is considered "disabled" under the Social Security Act if two requirements are

17  met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the

18  claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

19  any medically determinable physical or mental impairment which can be expected to result in

20  death or which has lasted or can be expected to last for a continuous period of not less than 12

21  months." 42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe

22  enough that the claimant is unable to perform previous work and cannot, based on age, education,

23  and work experience "engage in any other kind of substantial gainful work which exists in the

24  national economy." *Id.* § 423(d)(2)(A).

25       The regulations promulgated by the Commissioner of Social Security provide for a five-

26  step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. §

27  404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950

28  F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted).  Here, the ALJ determined Plaintiff did not engage in substantial gainful activity during a continuous twelve-month period.  AR 1497.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, major depressive disorder, and post-traumatic stress disorder (PTSD).  AR 1497.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listings.  AR 1497.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

4

despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

it." 20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f).  Here, the ALJ

determined Plaintiff has the RFC to perform light work except:

> cannot climb ladders, ropes and scaffolds and can perform other
> postural maneuvers such as stooping, crouching and crawling on an
> occasional basis. [Plaintiff] cannot perform any overhead reaching
> but can perform frequent other reaching, frequent handling and
> fingering. [Plaintiff] must avoid concentrated exposure to hazards
> such as unprotected heights and moving machinery.

AR. 1499. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work.

AR 1507.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a

significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting

*Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely

on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt.

P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted).

"[A] vocational expert or specialist may offer expert opinion testimony in response to a

hypothetical question about whether a person with the physical and mental limitations imposed by

the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

either as the claimant actually performed it or as generally performed in the national economy."

20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of

Occupational Titles ("DOT").[4]  *Id.*  Here, the ALJ determined there are jobs that exist in

---

[3] The grids "present, in table form, a short-hand method for determining the availability and
numbers of suitable jobs for a claimant." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114-15 (9th
Cir. 2006) (citing *Tackett*, 180 F.3d at 1101).  They consist of three tables, for sedentary work,
light work, and medium work, and a claimant's place on the applicable table depends on a matrix
of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.*
"For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not
disabled' based on the number of jobs in the national economy in that category of physical-
exertional requirements."  *Id.*
[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment &

significant numbers in the national economy that Plaintiff can perform.  AR 1507-08.  As such, the

ALJ determined Plaintiff was not disabled under the Act at any time from August 9, 2016 through

June 30, 2021.  AR. 1508.

**B.    Medical Opinions**

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting Dr.

Ives's opinion and Dr. Samuelson's opinion.  ECF No. 16 at 5-16.  Plaintiff also argues the ALJ

erred in relying on Dr. Tirado's opinion.  *Id*. at 17-18.

**1.    Legal Standard[5]**

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence."

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  In this circuit, courts distinguish

among the opinions of three types of physicians: (1) treating physicians who have an established

relationship with the claimant; (2) examining physicians who see the claimant but do not treat

him; and (3) non-examining physicians who neither examine nor treat the claimant.  *Lester v.

Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinion of a treating physician is entitled

to more weight than the opinion of an examining physician, and more weight is given to the

opinion of an examining physician than a non-examining physician.  *See Ghanim v. Colvin*, 763

F.3d 1154,1160 (9th Cir. 2014).  The ALJ "may disregard the treating physician's opinion whether

or not that opinion is contradicted."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "To

---

Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

[5] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844.  These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 404.1520c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Here, Plaintiff filed her application on October 19, 2016, before the rules took effect. AR 187.  Accordingly, the 2017 revisions do not apply to this case.

United States District Court
Northern District of California

1   reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and

2   convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec*., 528

3   F.3d 1194, 1198 (9th Cir. 2008).  "Even if the treating doctor's opinion is contradicted by another

4   doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons'

5   supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

6   1998) (internal citation omitted).  "This can be done by setting out a detailed and thorough

7   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

8   making findings . . .  The ALJ must do more than offer his conclusions.  [he or she] must set forth

9   [his or her] own interpretations and explain why they, rather than the doctors', are correct." *Id.*

10          **2.     Analysis**

11                 **a.     Dr. Ives**

12          Dr. Ives was Plaintiff's treating psychologist and provided an assessment of Plaintiff's

13   mental limitations on February 8, 2019.[6]  AR 1437-39.  Dr. Ives concluded that Plaintiff had a

14   poor ability to (1) deal with work stress, (2) understand, remember, and carry out complex job

15   instructions, and (3) understand, remember, and carry out detailed, but not complex, job

16   instruction.  AR 1437-38.  Dr. Ives summarized Plaintiff's symptoms as "[d]ecision making

17   becomes very difficult if client is experiencing emotional insecurity or PTSD triggers,"

18   "[i]nteracting with supervisors or co-workers is unpredictable," "difficulty managing her

19   emotions, resulting in angry outbursts," and the "[m]ost important to consider, is the effect of

20   chronic pain and the medications [Plaintiff] needs to take which may contribute to her cognitive

21   impairment."  AR. 1439.

22          The ALJ gave "partial weight" to Dr. Ives' assessment and stated:

23                 The limits on stress are inconsistent with her ability to regain her
                   nursing license and current work activity. This assessment is
24                 inconsistent with mental status exams and moderate GAF scores.
                   Furthermore, the claimant's daily activities such as her ability to
25                 manage finances and drive a car (4E) are inconsistent with this
                   assessment. Dr. Ives assessment regarding lifting packages is
26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [6] Dr. Ives also evaluated Plaintiff on December 4, 2016 and May 3, 2017.  AR 1504.  Because
28   Plaintiff does not challenge the ALJ's review of these assessments, *see* ECF No. 16 at 5-13, the
     Court proceeds to evaluate the ALJ's review of the February 8, 2019 assessment.

United States District Court
Northern District of California

1

> outside her area of expertise but generally consistent with the range
> of light exertion.

2  AR 1505.

3      Plaintiff argues the ALJ failed to provide clear and convincing reasons, supported by

4  substantial evidence, for giving Dr. Ives' opinion only "partial weight."  ECF No. 16 at 5-12.

5  Plaintiff also argues the ALJ failed to consider the factors outlined in 20 C.F.R. § 404.1527(c).  *Id*.

6  at 12-13.  Defendant argues the ALJ properly evaluated Dr. Ives' opinion.  ECF No. 18 at 4-5.

7      The Court finds the ALJ failed to properly evaluate Dr. Ives's opinion.[7]  Regarding

8  Plaintiff's nursing license, the record indicates that Plaintiff's license was placed on probationary

9  status after she plead guilty to a DUI in 2014.  AR 45, 197.  Plaintiff was subsequently dismissed

10  as a nurse but was able to regain her nursing license after the probationary status of her license

11  terminated.  AR 45.  The ALJ failed to explain how this termination of probation, and Plaintiff's

12  ability to regain her license, contradicts Dr. Ives' opinion.  For example, the ALJ failed to identify

13  anything Plaintiff had to do to get her nursing license off probationary status and how such

14  actions, if there were any, would have been inconsistent with Dr. Ives' opinion.

15      Regarding Plaintiff's current work activity, the Ninth Circuit has held that "[o]ccasional

16  symptom-free periods—and even the sporadic ability to work—are not inconsistent with

17  disability."  *Lewis v. Apfel*, 236 F.3d 503, 516 (9th Cir. 2001) (quoting *Lester*, 81 F.3d at 833).

18  Here, Dr. Ives did not opine that Plaintiff was permanently disabled.  Rather, Dr. Ives had

19  previously opined that Plaintiff's prognosis was "good" in the next 1-3 years with commitment to

20  therapy.  AR 334, 581.  The fact that Dr. Ives' prognosis was correct is not a logical reason to

21  reject her opinion.  Further, as noted above, by statute a disability can include a mental impairment

22  that prevents someone from engaging in substantial gainful activity for a continuous period of not

23  less than 12 months.  Thus, the statute on its face recognizes that there can be non-permanent

24  mental disabilities.  And, of course, Dr. Ives was a treating physician, and the whole point of

25

26  _____

[7] Here, the ALJ made no finding that Dr. Ives' opinion was contradicted by another medical

27  expert.  *See* AR 1504-05.  However, even if the Court applied the 'specific and legitimate'
standard for contradicted medical opinions, the ALJ's analysis still fails for the reasons stated in

28  this order.  *See Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002) ("The
clear and convincing standard is the most demanding required in Social Security cases.").

United States District Court
Northern District of California

1   treatment is to help someone improve.  In order for Plaintiff's current work to undercut Dr. Ives'

2   opinion that Plaintiff was disabled in an earlier time period, there would need to be something

3   about her current work that undercut or was inconsistent with an earlier period of disability.

4   However, the ALJ never articulated what that was.  Accordingly, the ALJ failed to explain how

5   Plaintiff's ability to return to work contradicts Dr. Ives' opinion.

6          The ALJ also failed to cite the relevant GAF scores and mental health status exams in her

7   analysis and did not explain how those scores and exams are inconsistent with Dr. Ives' opinion.

8   *Compare with Smartt*, 53 F.4th at 495-96 ("[T]he ALJ properly discounted the treating physician's

9   opinion by identifying specific reasons supported by substantial evidence . . . the ALJ identified

10  contemporaneous medical records [and] cited records[.]"); *see Paulette N. v. Saul*, No. 20-cv-

11  4950-SK, 2021 WL 4902421, at *4 (N.D. Cal. Oct. 21, 2021) ("[A] normal mental status

12  examination is not necessarily dispositive of whether an individual suffers from moderate

13  limitations in work-related functioning."); *M.D.B. v. Berryhill*, No. 19-cv-2435-LB, 2020 WL

14  4051863, at *14 (N.D. Cal. July 20, 2020) ("[T]he ALJ erred by concluding, without explanation,

15  that Dr. Cushman's assessment of a GAF score of 60, which reflects moderate symptoms or

16  moderate functional difficulties, is 'inconsistent with [his finding of plaintiff's] inability to attend

17  work regularly.'").

18         Regarding the ALJ's reliance on Plaintiff's daily activities, the Ninth Circuit has held that

19  "the Social Security Act does not require that claimants be utterly incapacitated to be eligible for

20  benefits, and many home activities may not be easily transferable to a work environment where it

21  might be impossible to rest periodically or take medication."  *Fair v. Bowen*, 885 F.2d 597, 603

22  (9th Cir. 1989).  Here, the ALJ failed to "specify how [Plaintiff's] daily activities contradicted [Dr.

23  Ives'] opinion."  *M.D.B. v. Berryhill*, No. 19-cv-2435-LB, 2020 WL 4051863, at *13 (N.D. Cal.

24  July 20, 2020); *see McCrady v. Berryhill*, No. 18-cv-0931-LB, 2018 WL 5785242, at *13 (N.D.

25  Cal. Nov. 1, 2018) ("The ALJ's reference to the opinions being inconsistent with Mr. McCrady's

26  'activities,' without further explanation, also does not constitute a 'specific and legitimate' reason

27  to give them less weight . . . The ALJ failed to engage in the necessary specific analysis of the

28  inconsistencies.").

United States District Court
Northern District of California

Finally, it is unclear whether the ALJ applied the factors set forth in 20 C.F.R. § 404.1527(c). Those regulations require the ALJ to consider factors, such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, and specialization, "when a treating source's opinions are not given controlling weight." *See Garrison*, 759 F.3d at 1012 n.11. The ALJ did not indicate that these factors were considered. For example, the ALJ did not state that Plaintiff received mental health treatment from Dr. Ives from September 2015 to December 20, 2019. *See* AR 334-36, 580-83, 1440-1481, and 1665. Moreover, the ALJ failed to include Dr. Ives' specialization as a psychologist and only referred to her as "Irene Ives, Ph.D." *See Lacy v. Saul*, No. 19-cv-0409-SI, 2019 WL 4845965, at *8 (N.D. Cal. Oct. 1, 2019) (finding ALJ failed to consider C.F.R. § 404.1527(c) factors because "[t]he ALJ did not state that Dr. Weber was plaintiff's treating psychiatrist or that Dr. Weber met with her four times during an eight-month period. The ALJ did not refer to Dr. Weber's area of specialization as a psychiatrist, but simply referred to him as 'Armeen Weber, MD, her medication prescriber.'").

Accordingly, the Court finds the ALJ failed to provide clear and convincing reasons for assigning "partial weight" to Dr. Ives' opinion. As discussed below, remand is appropriate.

### b.  Dr. Samuelson

Dr. Samuelson was the Agency's psychological consultive examiner and evaluated Plaintiff on February 6, 2017. Dr. Samuelson concluded that Plaintiff had mild difficulty performing simple and repetitive tasks, moderate difficulty performing complex and detailed tasks, moderate difficulty working with the public, supervisors, and coworkers, and moderate difficulty maintaining attention, concentration, persistence, and pace. AR 405. Dr. Samuelson also found that Plaintiff's ability to associate with day-to-day work activity, accept instruction, and maintain attendance and safety, and perform work activities without special or additional supervision were moderately impaired. AR 406.

The ALJ gave Dr. Samuelson's opinion "partial weight" because "[i]t is generally consistent with only moderate limitations. The limits on attendance and special supervision are not supported by the limited mental status exams and [Plaintiff's] current work history [and] it was

10

1  based on only one examination."  AR 1505.

2        Plaintiff argues the ALJ erred in giving Dr. Samuelson's opinion "partial weight."  ECF

3  No. 13-16.

4        The Court finds the ALJ failed to properly evaluate Dr. Samuelson's opinion.  The ALJ

5  stated that "[t]he limits on attendance and special supervisions are not supported by the limited

6  mental status exams and the claimant's current work activity.  It was based on only <u>one</u>

7  examination."  AR 1505 (emphasis added).  The ALJ failed to cite the relevant "limited mental

8  status exams" (plural) in her analysis and failed to explain how the mental status exams were

9  "limited."  *See Ann Cox*, 2015 WL 8596436 at *17 ("Not only did the ALJ fail to cite to evidence

10 of Plaintiff's positive response to psychotropic medication and her unremarkable findings on

11 mental status examinations, he also did not . . . explain how Plaintiff's results on mental status

12 examinations were unremarkable.").  If the ALJ meant to imply that Dr. Samuelson's exam was

13 "limited" she did not explain in what way it was so.  Similar to the ALJ's analysis of Dr. Ives'

14 opinion, the ALJ also failed to explain how Plaintiff's ability to return to work contradicts Dr.

15 Samuelson's opinion that Plaintiff was disabled years earlier.  *See Lewis*, 236 F.3d at 516.  Finally,

16 the fact that Dr. Samuelson's assessment "was based upon a one-time examination does not by

17 itself constitute a legitimate reason for rejecting the medical opinion of an examining physician."

18 *Raven-Jones v. Berryhill*, No. 16-cv-3766-LB, 2017 WL 1477128, at *18 (N.D. Cal. Apr. 25,

19 2017).  The ALJ's reliance on Dr. Samuelson's "one examination" is therefore not a clear and

20 convincing reason for assigning "partial weight" to the opinion.  As discussed below, remand is

21 appropriate.

22              **c.      Dr. Tirado**

23        Dr. Tirado, the Agency's non-examining psychologist, concluded that Plaintiff was not

24 disabled and had moderate limitations in ability to carry out detailed instructions, maintaining

25 attention and concentration for extended periods, completing a normal workday, interacting

26 appropriately with the general public, accepting instructions and responding appropriately, getting

27 along with coworkers or peers without distracting them, and responding appropriately to changes

28 in work setting.  AR 81-84.

United States District Court
Northern District of California

1     Plaintiff argues the ALJ erred in relying on Dr. Tirado's opinion and in giving the opinion

2  "great weight."  ECF No. 16 at 17-18.

3     Given the ALJ's failure to adequately consider Dr. Ives' and Dr. Samuelson's opinions, it

4  is unclear whether reconsideration of those opinions may affect the ALJ's analysis of Dr. Tirado's

5  opinion.  As discussed above, the opinions of a treating physician (Dr. Ives) or an examining

6  physician (Dr. Samuelson) are generally entitled to more weight than the opinion of someone who

7  is neither (Dr. Tirado).  Accordingly, the Court finds any decision regarding Dr. Tirado's opinion

8  premature.

9  **C.**    **Remaining Arguments**

10     As Plaintiff's remaining arguments depend in large part on the ALJ's consideration of the

11  medical opinions, the Court finds that any decision on them is premature.  However, the Agency

12  should take them into account as part of its reconsideration.

13  **D.**    **Remedy**

14     The remaining question is whether to remand for further administrative proceedings or for

15  the immediate payment of benefits.  The Social Security Act permits courts to affirm, modify, or

16  reverse the Commissioner's decision "with or without remanding the case for a rehearing."  42

17  U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019.  "[W]here the record has been developed

18  fully and further administrative proceedings would serve no useful purpose, the district court

19  should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

20  Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are

21  outstanding issues that must be resolved before a disability determination can be made, and it is

22  not clear from the record that the ALJ would be required to find the claimant disabled if all the

23  evidence were properly evaluated."  *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018)

24  (citations omitted).  It is only "rare circumstances that result in a direct award of benefits" and

25  "only when the record clearly contradicted an ALJ's conclusory findings and no substantial

26  evidence within the record supported the reasons provided by the ALJ for denial of benefits."

27  *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

28     Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's

United States District Court
Northern District of California

12

disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled.

Accordingly, remand for further proceedings is appropriate.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This matter is **REMANDED** for further administrative proceedings consistent with this order.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: December 19, 2022

THOMAS S. HIXSON
United States Magistrate Judge

13